RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

EDWIN A. TAVAREZ,

*Defendant-Appellant*.

No. 23-3666

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:19-cr-00124-4—Benita Y. Pearson, District Judge.

Decided and Filed:  June 23, 2025

Before:  CLAY, KETHLEDGE, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Kaycee L. Berente, Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant.  Poula E. Hanna, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge.  The district court denied Edwin Tavarez's pro se motion for early termination of supervised release in a summary order. The order consisted exclusively of a refiling of the probation officer's supervision report with a box next to the statement, "The Request is Denied," marked and a signature on the last page.  The district court then denied Tavarez's subsequent motion for access to the information underlying the district court's decision.  Tavarez timely appealed both orders.  For the reasons set forth below, we

**VACATE** the district court's order on Tavarez's motion for early termination of supervised release, **AFFIRM** the district court's denial of Tavarez's motion for access to documents, and **REMAND** for further proceedings.

## I. BACKGROUND

In November 2017, Edwin Tavarez began acting as a courier for his brother's illegal cocaine supply business by delivering cocaine to Angel Rios and Jaime Hernandez-De La Paz at El Torito Taqueria, a restaurant in Lakewood, Ohio. Tavarez's brother passed away in late 2018, and Tavarez fell into possession of the remainder of his brother's cocaine. He continued to deliver the cocaine until February 1, 2019, when Rios and Hernandez were arrested. By that point, Tavarez had delivered between two and a half and three kilograms of cocaine to El Torito Taqueria. In the weeks that followed, Tavarez worked to find other customers in order to offload the remaining two kilograms of cocaine he possessed. But during a traffic stop on February 16, 2019, Ohio State Highway Patrol troopers found Tavarez in possession of one kilogram of cocaine, and, after a subsequent consent search of Tavarez's home, authorities discovered the last kilogram.

On July 17, 2019, a grand jury charged Tavarez with one count of Conspiracy to Possess with the Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846 ("Count 1"); one count of Possession with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) ("Count 7"); and one count of Use of a Communications Facility in Furtherance of a Drug Trafficking crime, in violation of 21 U.S.C. § 843(b) ("Count 19"). On November 7, 2019, Tavarez entered into a plea agreement with the Government, under which Tavarez agreed to plead guilty to Counts 1 and 7 and the Government agreed to dismiss Count 19. On February 20, 2020, the district court sentenced Tavarez to an 18-month term of imprisonment and a four-year term of supervised release, the first year of which would include the special condition of home detention with location monitoring (the "Location Monitoring Program").

In April 2021, and again in June 2021, Tavarez moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). On September 3, 2021, the district court granted both motions, reasoning that the Board of Prison's failure to apply 105 days of time credit to which

Tavarez was entitled under 18 U.S.C. § 3632(d)(4)(A), along with the 18 U.S.C. § 3553(a) factors, warranted Tavarez's immediate release from custody. The court reduced Tavarez's custodial sentence to time served and extended his participation in the Location Monitoring Program by a period equal to the time remaining on his initial custodial sentence. The same order also directed Tavarez to serve the first 30 days of supervised release after his participation in the Location Monitoring Program in a halfway house, but the district court later removed that condition and instead ordered Tavarez to continue in the Location Monitoring Program for an additional 30 days. On June 15, 2022, after Tavarez had served approximately half of his required time in the Location Monitoring Program, the court entered a summary order terminating the special condition.

Approximately one year later, on June 16, 2023, Tavarez filed a pro se motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1) (the "Early Termination Motion"), which argued that immediate termination was warranted based on his good behavior on release and the Board of Prison's mishandling of his earned time credit while in custody. The district court denied the motion by refiling the probation officer's confidential Supervision Report with only two additions: (1) a mark in the box next to the statement, "The Request is Denied," and (2) a signature on the last page (the "Summary Order").

To prepare an appeal, Tavarez filed a pro se motion (the "Documents Access Motion"), requesting copies of the documents related to the Summary Order, including the underlying information the probation officer provided the court in advance of its decision. In the same document, Tavarez requested an extension of time to file his notice of appeal. The district court denied both requests in a single order (the "Document Access Order"). According to the court, Tavarez lacked good cause for the requested extension because his appeal was barred by 18 U.S.C. § 3742(a). With regard to the documents request, the court denied Tavarez's motion because he provided no support suggesting he was entitled to the Supervision Report.

Despite the denial of his requested extension, Tavarez timely filed his notice of appeal of the Summary Order and the portion of the Documents Access Order concerning his request for the Supervision Report. On appeal, he does not challenge the denial of his requested extension of time.

## II.  ANALYSIS

Now represented, Tavarez first argues that § 3742(a) does not impede this court's review of the Summary Order.  He also contends that the district court abused its discretion by failing to consider the § 3553(a) factors in its Summary Order and by refusing to provide him with the information requested in his Documents Access Motion.  We address these arguments in turn.

### A.  The Applicability of Section 3742(a)

Whether § 3742(a) impedes our review of the district court's Summary Order "is a question of statutory interpretation, and 'a matter requiring statutory interpretation is a question of law requiring de novo review.'"  *United States v. Lumbard*, 706 F.3d 716, 720 (6th Cir. 2013) (quoting *Roberts v. Hamer*, 655 F.3d 578, 582 (6th Cir. 2011)).  When interpreting a statute, we "afford the law's terms their ordinary meaning at the time Congress adopted them."  *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021).  "But we also keep in mind that 'statutory language has meaning only in context.'"  *Ebu v. U.S. Citizen & Immigr. Servs.*, 134 F.4th 895, 898 (6th Cir. 2025) (quoting *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022)).

Section 3742(a) provides:

(a) Appeal by a defendant.—A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

    (1) was imposed in violation of law;

    (2) was imposed as a result of an incorrect application of the sentencing guidelines;

    (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment . . . than the maximum established in the guideline range . . . ; or

    (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a).  Tavarez and the Government disagree as to whether appeals of denials of motions like Tavarez's Early Termination Motion lie within the ambit of § 3742(a) and are, therefore, subject to its limitations.

The statute's plain terms "allow[] a defendant to file a notice of appeal from 'an otherwise final sentence' in only a handful of circumstances," *United States v. Richardson*, 960 F.3d 761, 763 (6th Cir. 2020) (per curiam) (quoting 18 U.S.C. § 3742(a)), and specifically limit a defendant's right to seek "review of an otherwise final sentence" to the circumstances delineated in its four subprovisions, 18 U.S.C. § 3742(a). In this circumscribed way, § 3742(a) governs situations where the defendant challenges the validity of a sentence imposed on him.

In *Richardson*, which the Government's brief fails to reference, we considered § 3742(a)'s relevance to motions for sentence reductions under the First Step Act of 2018. 960 F.3d at 763–64. As we explained, § 3742(a) "does not provide the basis or the criteria for review[]" of the defendant's appeal of a district court's denial of his motion to reduce his sentence. *Id.* at 764. We reasoned that, because the district court "did not impose a new or modified sentence," § 3742(a) was wholly inapplicable. *Id.* (internal quotation marks omitted).

We can apply our reasoning in *Richardson* to this analogous circumstance. Though an early termination motion may ultimately result in relief from a sentence, such a motion does not challenge or seek review of the validity of the sentence itself. 18 U.S.C. § 3583(e)(1). An appeal of a denial of an early termination motion is no doubt related to the final sentence, but a defendant in this context seeks review of the motion's denial without taking a position on the validity of the initially imposed sentence. Because the district court did not impose a new or modified sentence, and because Tavarez does not ask us to review such a sentence, § 3742(a) does not "provide the basis or the criteria for reviewing" the Summary Order. *Richardson*, 960 F.3d at 764.

The statute's other provisions support this reading of § 3742(a). *Id.* at 766 (Kethledge J., concurring). For instance, § 3742(e) provides that, "[u]pon review of the record, the court of appeals shall determine whether the sentence" was, among other things, "imposed in violation of law" or "imposed as a result of an incorrect application of the sentencing guidelines[.]" Section 3742(f), "Decision and disposition," provides that the court of appeals shall either "affirm the sentence" or "remand the case for further sentencing proceedings[,]" depending on whether, among other considerations, "the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines[.]" And § 3742(g) instructs the district

court to "resentence [the] defendant" if the case is remanded. All these provisions envision review of an attack on the propriety of the sentence imposed, rather than review of a decision that may relate to the sentence but does not challenge its propriety.

The lack of fit between these provisions in § 3742(a) and our treatment of appeals of denials of early termination motions is evident. In early termination cases, we have assessed the district court's decision to deny the motion—not the sentence that the court initially imposed. *E.g.*, *United States v. Hale*, 127 F.4th 638, 640–42 (6th Cir. 2025). Likewise, where we have found that the district court erred in denying the defendants' early termination motion, we have vacated the decision and remanded for further proceedings on early termination—not required resentencing. *Id.* at 642.

Succinctly stated, "§ 3724(a) by its terms is completely inapposite in a case where the district court denies a defendant's motion to modify his sentence. What § 3742 plainly does, rather, is regulate from start to finish a circuit court's review of sentences newly imposed by the district court." *Richardson*, 960 F.3d at 765–66 (Kethledge, J., concurring) (emphasis omitted). Thus, when a defendant seeks review of a district court's denial of an early termination motion— a motion to modify a sentence—§ 3742(a) neither limits our jurisdiction over the appeal nor confines our power to grant certain types of relief. Instead, § 3742(a) simply is not applicable.

The Government resists this conclusion by casting our decision in *United States v. Marshall*, 954 F.3d 823 (2020), as conclusively holding that § 3742(a) forecloses any opportunity for a defendant to appeal the denial of an early termination motion. *Marshall*'s holding was far more modest. There, we held only that § 1291, which grants this court appellate jurisdiction over all our district courts' final orders, provides subject matter jurisdiction over an appeal from a district court's denial of an early termination motion—a proposition no party to this case contests. 954 F.3d at 829. *Marshall* went on to question whether we had "authority to grant relief" under § 3742, *id.* at 829–31, and expressly did "not finally resolve the point," *id.* at 831. Instead, we assumed that § 3742(a) did not impede our review and concluded that the district court had not abused its discretion by denying the defendant's motion because he had previously violated the conditions of his supervised release. *Id.* Thus, although "[o]ur precedents have sent mixed signals regarding the scope of 18 U.S.C. § 3742," *Richardson*, 960

F.3d at 765 (Kethledge, J., concurring), no past precedent requires us to interpret § 3742(a) as foreclosing all post-sentencing appeals that do not fall into any of its four subprovisions. And, as explained above, our only relevant subsequent published opinion, *Richardson*, clarified § 3742(a)'s limited scope and permitted review of denials of motions that seek only to modify a sentence rather than challenge its validity. 960 F.3d at 764.

Tavarez seeks to appeal the district court's Summary Order denying his Early Termination Motion. Because § 3742(a) does not impede our review, we turn to Tavarez's case.

## B. Tavarez's Early Termination Motion

After consideration of certain § 3553(a) factors, a district court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The relevant § 3553(a) factors are:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed education or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established from the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3553(a)(1), (2)(B)–(D) & (4)–(7)).

"We review the district court's denial of a motion for early termination of supervised release under the abuse-of-discretion standard." *Hale*, 127 F.4th at 640. Generally, "[a] district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006). But a court also abuses its discretion in denying a motion for sentence reduction when "the record as a whole" fails to satisfy us that the district court

"'considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority.'" *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) (quoting *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)) (brackets in original).

Tavarez argues that the district court abused its discretion by entering the Summary Order without explicitly addressing or indicating that it had considered the pertinent § 3553(a) factors. He requests that we vacate the order and remand for reconsideration of his motion, including some indication that the court consider those factors. The Supreme Court has not yet addressed whether a district court must demonstrate that it considered these factors when ruling on a § 3853(e)(1) motion, nor has our circuit issued a published opinion on the subject.

We begin with de novo review of that preliminary question. *See United States v. Stephens*, 118 F.3d 479, 481 (6th Cir. 1997) ("Such a scenario presents a quintessential pure question of law that this court reviews de novo.").

Under § 3853(e)(1), a district court may terminate a qualifying defendant's supervised release only after it considers certain § 3553(a) factors and determines that termination is "warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). For aid in interpreting § 3853(e)(1), we look to an analogous provision in an adjacent section of the code. Like § 3583(e)(1), 18 U.S.C. § 3582(c)(2) provides clear instruction when the court would take one action—there, granting a motion to reduce a custodial sentence—but does not explicitly speak to a court's obligation when taking the opposite action—denying the motion. Indeed, at least one other panel in this circuit has looked to our cases on § 3582(c)(2) to interpret § 3583(e)(1). *United States v. Zai*, No. 22-3371, 2022 WL 17832201, at *5 (6th Cir. Dec. 21, 2022). Though unpublished, we have since relied on *Zai* to evaluate district courts' orders denying early termination motions. *See United States v. Butler*, No. 22-5877, 2023 WL 6552878, at *2 (6th Cir. June 14, 2023) (order). So, how we have interpreted § 3582(c)(2) is instructive for our approach to § 3583(e)(1). And in considering § 3582(c)(2), our binding precedent has routinely and recently held that "the record must show that the district court 'reasoned through' [the defendant's nonfrivolous] arguments when ruling on a motion" even when the district court denies the defendant's motion. *United States v. Davis-Malone*, 128 F.4th 829, 834 (6th Cir. 2025) (quoting *United States v. Goodwin*, 87 F.4th 321, 327 (6th Cir.

2023)).  In these cases, the district court need not "articulate its analysis of each sentencing factor as long as the record demonstrates that the court considered the relevant factors." *United States v. Watkins*, 625 F.3d 277, 281 (6th Cir. 2010).

Requiring the district court to consider the relevant § 3553(a) factors when denying a § 3583(e)(1) motion also aligns with the approach of several of our sister circuits, which have held that "[a] district court's duty to explain its sentencing decisions must also extend to requests for early termination of supervised release." *E.g.*, *United States v. Emmett*, 749 F.3d 817, 820 (9th Cir. 2014); *see also United States v. Melvin*, 978 F.3d 49, 52–53 (3rd Cir. 2020) ("District courts are not required to make specific findings of fact with respect to each of these factors; rather, a statement that the district court has considered the statutory factors is sufficient." (citation, internal quotation marks, and brackets omitted)); *United States v. Johnson*, 877 F.3d 993, 998 (11th Cir. 2017) ("We accordingly conclude that for a § 3583(e)(1) motion to be properly denied, the court's order, in light of the record, must indicate that the court considered the factors enumerated in the provision.").  These circuit decisions also highlight prudential concerns expressed by the Supreme Court that are relevant here, namely that explanations allow us to "conduct meaningful appellate review of [the district court's] decisions" and "promote the perception of fair sentencing . . . by reassuring the public of the judiciary's commitment to reasoned decisionmaking." *Emmett*, 749 F.3d at 820 (quoting *Gall v. United States*, 552 U.S. 38, 50, 52 (2007); *Rita v. United States*, 551 U.S. 338, 356 (2007)).

Thus, we hold that the record must demonstrate that the district court considered the relevant § 3553(a) factors before denying an early termination motion.  We now apply this rule to the claim in this case.

Tavarez began his term of supervised release in September 2021 and moved for early termination of supervised release in June 2023.  He satisfies § 3853(e)(1)'s requirement that he complete one year of supervised release before the district court may terminate the supervised release term.  But the district court denied Tavarez's Early Termination Motion by refiling the Supervision Report after marking the box, "The Request is Denied," and signing the last page.  In doing so, the court through that Summary Order offered no explanation of its reasoning or demonstration that it considered the required § 3553(a) factors.

The Supervision Report itself recommended denying Tavarez's Early Termination Motion because Tavarez purportedly "struggle[d] with completing monthly reports promptly" and "ha[d] not yet served half of the term of his supervision."  R. 257, Order, PageID 1667. Neither of these reasons concerns any of the relevant § 3553(a) factors.  And there is no mention of the factors anywhere in the Report.  So, the Summary Order does not show that the district court reasoned through Tavarez's arguments or considered the relevant § 3553(a) factors.

The Government urges us to look to the district court's discussion of the § 3553(a) factors during the sentencing hearing and to rely on later orders granting Tavarez's requests for compassionate release, for the termination of his location monitoring, and for permission to travel to Columbus, Ohio.  According to the Government, it is enough that the record indicates that the district court was familiar with the defendant, his history, and his conduct while on supervised release.  Tavarez's arguments for early termination incorporated his conduct through the date it was filed, which was one and a half years after the district court granted his motion for compassionate release and last explicitly considered or even mentioned any of the § 3553(a) factors in his case.  All three orders issued after Tavarez was released, moreover, were similar summary orders devoid of any explanation of the district court's reasoning.  The district court's consideration or even recognition of any impact that Tavarez's behavior on release may have had on its analysis of the § 3553(a) factors is missing from the record.  Crucially, even if the facts of Tavarez's case were fresh in the district court's mind, the lack of any explanation renders it "impossible to discern from the record how or why denying the motion to terminate comported with consideration of the relevant § 3553(a) factors." *Zai*, 2022 WL 17832201, at *7 (quoting *United States v. Mathis-Gardner*, 783 F.3d 1286, 1290 (D.C. Cir. 2015)).

As a result, we find no indication that the district court considered the relevant § 3553(a) sentencing factors when denying Tavarez's Early Termination Motion.  We conclude that the district court abused its discretion, and therefore vacate its order and remand for reconsideration.

## C.  Tavarez's Documents Access Motion

Tavarez also appeals the district court's denial of his Documents Access Motion, which sought access to the Supervision Report.  Before the district court, Tavarez contended that he

was entitled to access to the Report with sufficient time to object in writing to its material information before the court issued its decision and to prepare his appeal. Now represented, Tavarez has narrowed his argument to focus exclusively on the material information contained in the Report rather than the full Report which included the probation officer's recommendation. Specifically, he argues that the district court abused its discretion afforded under Federal Rule of Criminal Procedure 32 ("Rule 32") by failing to disclose the information contained in the Supervision Report. Elsewhere, Tavarez asserts that the district court violated multiple "Federal *Rules* of Criminal Procedure by preventing [him] from reviewing the information." Reply Br. 10 (emphasis added). However, he does not name those other rules, and his argument addresses only Rule 32. So, we limit our consideration to that Rule.

Tavarez misreads the Documents Access Order. That order denied Tavarez's request because it found no legal basis suggesting that Tavarez was entitled to the Supervision Report; it did not rely on Rule 32 to demonstrate that it was unable to disclose the Report. Rather, the Document Access Order cited Rule 32 and a related local rule as examples of instances where the court has discretion to withhold a probation officer's recommendation.

Rule 32 squarely deals with the initial sentencing process. It first instructs courts to "impose [the] sentence without unnecessary delay." Fed. R. Crim. P. 32(b). Next, it details the Government's and probation officer's obligations and the defendant's rights with regard to the presentence investigation and presentence report. *Id.* 32(c)–(h). And it concludes by addressing the sentencing hearing, the judgment, and the defendant's right to appeal. *Id*. 32(i)–(k). Tavarez avers that the requirements in Rule 32(e)(2)–(3), which provide for the amount of time the defendant must be afforded to consider the presentence report before his sentencing hearing and the circumstances under which the court may forbid disclosure of the probation officer's recommended sentence, apply here.

But § 3583(e)(1) explicitly directs courts to follow "the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation." Those provisions are found in Federal Rule of Criminal Procedure 32.1(c) ("Rule 32.1(c)"), not Rule 32, and dictate that "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing" unless "(A) the person waives the hearing; or (B) the relief sought is favorable to the

person and does not extend the term of probation or of supervised release; and (C) an attorney for the [G]overnment has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so." Fed. R. Crim. P. 32.1(c)(1)–(2). Rule 32.1(c) contains no disclosure requirement of any kind. *Id.* At bottom, the district court was not required to follow any part of Rule 32 when considering Tavarez's Early Termination Motion, as Tavarez suggests it was.

Because the district court had no obligation to disclose the Supervision Report or any of its content, it did not abuse its discretion in denying Tavarez's request.

### III. CONCLUSION

For the reasons stated, we **VACATE** the district court's Summary Order, **AFFIRM** the district court's Documents Access Order, and **REMAND** for further proceedings.